Case 05-03542-bjh Doc 80 Filed 06/15/06 Entered 06/15/06 09:57:45 Page 1 of 13

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 15, 2006                                         United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| e2 COMMUNICATIONS, INC., | § | CASE NO. 02-30574-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| e2 CREDITORS TRUST and | § | |
| e2 LITIGATION TRUST, | § | |
| Plaintiffs, | § | ADV. PRO. NO. 05-3542-BJH |
| - against - | § | |
| STEPHENS, INC., | § | |
| Defendant. | § | |

**Memorandum Opinion and Order**

Before the Court is a motion by defendant Stephens, Inc. ("Stephens") to compel the production of documents within the scope of a request for production served on the plaintiffs (the "Plaintiffs") in October, 2005 (the "Motion"). The Plaintiffs have opposed the Motion, claiming that

the documents which are the subject of the Motion (the "Documents") are privileged from disclosure by the attorney-client privilege, and have provided a privilege log in accordance with the Federal Rules of Bankruptcy Procedure.

The Court held a hearing on the Motion on May 22, 2006, at which it heard the testimony of James Wade Browne ("Browne") and received various exhibits into evidence. Following the hearing, on May 25, 2006, the Plaintiffs provided copies of the Documents to the Court for *in camera* inspection, after which the Court took the Motion under advisement.

**I. Factual and Procedural Background**

The Plaintiffs in this adversary proceeding are two trusts created pursuant to the Third Amended Joint Plan of Reorganization for e2 Communications, Inc. ("e2"), which was confirmed on February 10, 2003. The Plaintiffs commenced this adversary proceeding on July 5, 2005, by filing the complaint (the "Complaint"). The Complaint alleges that in June 2001, e2 and Stephens entered into a contract by which Stephens was to assist e2 in exploring strategic alternatives for e2's business, including raising capital and exploring a sale and merger of e2 with another entity. The Complaint further alleges that (i) in October, 2001, Stephens recommended the merger of e2 and e-Synergies, pursuant to which e-Synergies was to assume approximately $4 million of liabilities of e2; (ii) Stephens failed to undertake an analysis of e-Synergies' ability to pay the liabilities it was agreeing to assume; and (iii) after the merger agreement was executed, e-Synergies failed to pay those liabilities and e2 was forced into bankruptcy. The Complaint contains state law claims for breach of contract and breach of fiduciary duty. The Complaint also constitutes an objection to the proof of claim which Stephens filed in the bankruptcy case, allegedly to recover for services Stephens performed under its contract with e2. Lastly, the Complaint seeks to equitably subordinate the

Stephens proof of claim pursuant to 11 U.S.C. § 510(c), on the ground that the conduct alleged in the breach of contract and breach of fiduciary duty claims "constitute abuses or misuses of the Defendant's fiduciary position and/or other inequitable conduct which resulted in injury to the Debtor and/or conferred an unfair advantage on the Defendant sufficient to support equitable subordination of all or part of the Defendant's claims against the Estate . . . " *Compl.*, ¶ 50.

Stephens brought the Motion, alleging that the Documents are not privileged merely because Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump") was a party to most of the communications. According to Stephens, neither e2 nor Browne were Akin Gump's clients, and Browne (who is also a party to the communications) was never a director of e2. Stephens argues that there is no evidence that e2 was a client of Akin Gump, or that Browne was a representative of e2 for purposes of the attorney-client privilege. Stephens argues that even if e2 was Akin Gump's client, the privilege only applies to communications between e2's representatives and e2's counsel, and Browne was

> never an employee of e2. There is no evidence to support a conclusion that he had authority to hire or fire counsel for e2. Brown did not have ultimate decision making authority for e2 . . . Browne had no authority to bind e2 with respect to any advice given by Akin Gump. Therefore, under Texas law Browne is not a "representative" of e2 for purposes of asserting the attorney-client privilege . . . .

Motion, at ¶ 8.

In contrast, the Plaintiffs assert that all of the communications being withheld on the ground of attorney-client privilege were between Akin Gump on the one hand, and Browne and/or members of the Board of Directors of e2 or their counsel on the other. The Plaintiffs assert that at all relevant times, Browne was an advisory director of e2 with the functional equivalency of a senior level e2 employee, and the communications between Browne and Akin Gump concerned information that

Akin Gump needed in order to give its legal advice on the proposed merger with e-Synergies, a security interest granted to Jeff Farris, and/or matters relating to shares of e2 stock owned by Janeice Anderson.

## II. Legal Analysis

The attorney client privilege is "the oldest of the privileges for confidential communications known to the common law. Its central purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Willy v. Administrative Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005). However, since the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. *U.S. v. Robinson*, 121 F.3d 971 (5th Cir. 1997).

The burden of proof to establish the existence of the attorney-client privilege rests on the party asserting the privilege. *In re Sante Fe Intern. Corp.*, 272 F.3d 705 (5th Cir. 2001); *U.S. v. Kelly*, 569 F.2d 928 (5th Cir. 1978). The party asserting the privilege also bears the burden of establishing that the privilege has not been waived. *Variable Annuity Life Ins. Co. v. Penco, Inc.*, No. Civ. A.H. 052763, 2006 WL 581522 (S.D. Tex. March 7, 2006). In other words, the privilege claimant must establish both the existence of the privilege and the absence of a waiver. *James v. Harris County Sheriff's Dept.*, 234 F.R.D. 150 (S.D. Tex. 2006).

The parties in this case dispute whether the federal common law respecting attorney-client privilege applies, or whether the claims of privilege in this case must be assessed under the Texas Rules of Evidence. In a diversity case where the claims are solely state law claims, it is clear that the state law of privilege applies. *In re Avantel, S.A.*, 343 F.3d 311 (5th Cir. 2003). It is equally clear

that in a purely federal question case, the federal common law of privilege applies. *Willy v. Administrative Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005) ("questions of privilege that arise in the courts of adjudication of federal rights are governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience"); *Gilbreath v. Guadalupe Hosp. Foundation, Inc.*, 5 F.3d 785 (5th Cir. 1993) (an action to enforce a subpoena issued by the Merit Systems Protection Board is a federal action, and thus the right to assert a privilege is dictated by federal law).

In cases in federal court where both federal and state law claims are raised, such as the present case, the case law reveals that where the court's jurisdiction is premised upon a federal question, the federal law of privilege is paramount even if the evidence is relevant to a pendent state law count which may be controlled by a contrary state law of privilege. *Blum v. Spectrum Restaurant Group Employees*, 2003 WL 367059 (E.D. Tex. 2003) (*citing Smith v. Smith*, 154 F.R.D. 661 (ND Tex. 1994). However, where the evidence sought by a party applies exclusively to state law claims, state privilege law applies, notwithstanding the presence of federal claims in the case. *Garza v. Scott and White Mem'l Hosp.*, 234 F.R.D. 617 (W.D. Tex. 2005) (state privilege law, rather than federal privilege law, applied to pendent state law medical malpractice claims despite the presence of claims under the Federal Tort Claim Act, where the evidentiary materials sought pertained exclusively to the state law claims).

In the present adversary proceeding, the Plaintiffs assert state law claims for breach of contract and breach of fiduciary duty. However, they also assert an objection to a proof of claim and a claim for equitable subordination under the Bankruptcy Code, both of which are within this Court's "core" jurisdiction under 28 U.S.C. § 157(b)(2). The Documents do not appear to pertain exclusively

to the Plaintiffs' state law claims, as the same conduct which forms the basis for those claims is alleged to constitute grounds (i) to equitably subordinate Stephens's claim against the estate under 11 U.S.C. § 510(c) and (ii) to disallow Stephens's claim in its entirety under 11 U.S.C. § 502. Accordingly, the evidence, if relevant at all, is by definition relevant to both the state and federal law claims. The Court therefore concludes that it is appropriate to assess the assertion of attorney-client privilege under the standards set forth under federal common law.

> The Fifth Circuit has held that the attorney-client privilege applies only if:
>
> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made
>   (a) is a member of the bar of a court, or his subordinate and
>   (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed
>   (a) by his client
>   (b) without the presence of strangers
>   (c) for the purpose of securing primarily either
>     (i) an opinion on law or
>     (ii) legal services or
>     (iii) assistance in some legal proceeding, and not
>   (d) for the purpose of committing a crime or tort; and
> (4) the privilege has been
>   (a) claimed and
>   (b) not waived by the client.

*United States v. Kelly* 569 F.2d 928 (5th Cir. 1978); *Blum v. Spectrum Restaurant Group*, 2003 WL 367059 (E.D. Tex 2003). In essence, the privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. However, "[t]he privilege also protects communications from a lawyer to the client, at least if they would tend to disclose the client's confidential communications." *Blum*, citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 720 (5th Cir. 1985).

The Federal Rules of Evidence contain no definition of the word "client" and federal courts

have adopted several different tests. The most restrictive test is the "control group" test, limiting the category to persons with authority to seek and act upon legal advice for the client. The United States Supreme Court, in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), rejected under federal law the control group test, which restricts the availability of privilege to those officers who play a substantial role in deciding and directing a corporation's legal response, as being too restrictive, but the Supreme Court did not articulate the standard to be applied. Instead, the *Upjohn* court cited the legislative history to Federal Rule of Evidence 501, which states that "the recognition of a privilege based on a confidential relationship . . . should be determined on a case-by-case basis"). *Upjohn*, at 396.[1]

The Plaintiffs cite *In re Bieter Co.*, 16 F.3d 929, (8th Cir. 1994), which extended the attorney-client privilege to an independent contractor of the client. The *Bieter* court noted that "at times there will be potential information-givers who are not employees of the corporation but who are nonetheless meaningfully associated with the corporation in a way that makes it appropriate to consider them 'insiders' for purposes of the privilege." *Bieter*, 16 F.3d at 936 (citing John E. Sexton, *Consideration of the Corporate Attorney-Client Privilege*, 57 N.Y.U. L. Rev. 443, 498 (1982)).

---

[1] The Court notes that the "control group" test, which was once the standard by which Texas state courts assessed the privilege under Texas Rule of Evidence 503, was abandoned in Texas in 1998, when the Legislature added subsection (B) to Rule 503(a)(2), which defines a "representative of the client" for privilege purposes. While originally defined only as "a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client," – *ie*., the "control group," subsection (B) adds "any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." Even if the Court was to assess the privilege under Texas state law, therefore, the Court would find that the legal standard relied upon by Stephens, as set forth in the case it cited, *Osborne v. Johnson*, 954 S.W.2d 180 (Ct. App. – Waco 1997) (a case which pre-dated the change to Rule 503), is the incorrect legal standard under Texas state law. *See In re Avantel, SA*, 343 F.3d 311, 318 (5th Cir. 2003) (noting that pre-1998, Texas used the control group test but adopted the "subject matter test" in 1998, which is more expansive and "protects a broader range of communications, including those made by individuals outside the corporations' control group").

The *Bieter* court ruled that the attorney-client privilege should extend to non-employees who possess a "significant relationship to the [client] and the [client's] involvement in the transaction that is the subject of legal services." *Id*. at 938 (citing *Sexton*, *supra*). On the record before it, the *Bieter* court concluded that the independent contractor was "in all relevant respects the functional equivalent of an employee." *Id*.

The Fifth Circuit has not expressly adopted *Bieter*. It has, however, noted that "the scope of the attorney-client privilege is shaped by its purposes. *U.S. v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982). At least one lower federal court in Texas has indicated its approval of *Bieter's* reasoning. *Ferko v. Nat'l Assoc. For Stock Car Auto Racing, Inc.*, 218 F.R.D. 125 (E.D. Tex. 2003) (noting that communications between an attorney and a financial professional hired by the client would be protected by the privilege if the financial professional was effectively an employee of the client). The reasoning of *Bieter* has been adopted in other jurisdictions. *See, e.g., Western Resources, Inc. v. Union Pacific Railroad Co.*, No. 00-2043-CM, 2002 WL 181494 (D. Kan. 2002) (applying the privilege to an expert consultant to the client in non-litigation matters); *Royal Surplus Lines Ins. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 463 (W.D. Tenn. 1999) (extending the privilege to a broker); *Alliance Const. Solutions, Inc. v. Dept of Corrections*, 54 P.3d 861 (Colo. 2002) (extending the privilege to an independent contractor of the Department of Corrections where the independent contractor's employee provided the Department's counsel with factual information needed to obtain satisfactory legal advice, the employee was the primary contact of the Department's counsel on many issues involved in the litigation, and the Department's counsel understood communications with the employee to be confidential). Similarly, this Court finds *Bieter's* reasoning to be persuasive, and adopts the standard set forth in that case.

Based upon the evidence introduced at the May 22, 2006 hearing, the Court concludes that Akin Gump was, for the purpose of privilege, representing either e2 or its outside directors (who were acting on behalf of e2 with respect to communications to and from Akin Gump), and that Browne's relationship with e2 was such that he is properly considered a representative of the "client" for purposes of privilege. In other words, the Court finds that Browne's presence in the communications did not waive the privilege claimed by e2.

This ruling does not, however, fully resolve the issue before the Court – namely, whether each of the 141 Documents produced for *in camera* inspection is properly claimed as privileged from disclosure pursuant to the attorney-client privilege. The Court's finding that Browne's presence in the communications does not destroy the privilege does not mean that the privilege has been properly claimed or supported. The parties' evidentiary presentation at the hearing falls far short of establishing the other necessary elements for a proper claim of privilege with respect to some of the Documents. Rather, the parties focused solely on Browne's role, and whether or not he is properly considered a "representative of the client" for privilege purposes. The Court, however, has had the benefit of a review of the Documents (the vast majority of which are emails) and on their face, some do not appear to be the proper subject of a claim of privilege.

Forty-nine of the Documents are communications originating with the client, and are thus the easiest to assess.[2] Documents 8, 50, 61, 62 (which appears to be a duplicate of 50), 69, 75, 81, 84, 87, 89, 90, 91, 95, 96, 100, 115, 117, 119, 121, 127, 129, 131, 133, 135, 138, 139, 141, 143, 149, 150, 151, 152, 154, 159, 160, 161, 163, 165, 167, 169, 170 and 172 appear to be confidential

---

[2] Document 67 is identified on the privilege log as being from Browne to Akin Gump, when in fact it is the reverse.

**Memorandum Opinion and Order** **Page 9**

communications from client to lawyer for the purpose of obtaining legal advice. Although Document 18 originates with the client, it is not a communication to a lawyer (an Akin Gump lawyer is present at earlier points in the chain, but the communication from the lawyer does not appear to disclose any confidential information from the client). The same is true with respect to Documents 19, 41, 103, and 130. Those Documents (18, 19, 41, 103 and 130) are therefore not privileged. Document 99 is a communication from client to attorney, but it simply forwards a draft document and does not appear to contain any confidential communication. Documents otherwise discoverable are not made privileged simply because they are given to a lawyer. "It goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). The same is true with respect to Documents 124 and 130. Those Documents (99, 124 and 130) are therefore not privileged from disclosure. Document 111 is a copy of an email from Browne to himself at a different email address, in which an Akin Gump attorney gave Browne his contact information at the firm and his cell phone number. As there does not appear to be any confidential information communicated from client to lawyer, Document 111 is not privileged.

The remaining 92 Documents[3] represent communications from lawyer to client and, due to the evidentiary deficiency noted above, are more difficult to assess. And, as also noted above, the attorney-client privilege shields communications from the lawyer to the client only to the extent that they are based on, or may disclose, confidential information provided by the client or contain advice or the opinions of the attorney. *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994); *Aspex*

---

[3] Document 143 is identified on the privilege log as being from Akin Gump to Browne, when in fact it is the reverse.

**Memorandum Opinion and Order** **Page 10**

*Eyewear, Inc. V. E'Lite Optik, Inc.*, No. Civ.A.3:98-CV-2996-D, 2002 WL 1592606 (N.D. Tex. July 17, 2002) (unpublished disposition).

Many of the Documents clearly contain advice, opinion and/or the mental impressions of the lawyer, or attach redline copies of documents revised to reflect comments, or respond to requests for legal information from the client. Documents 2, 4, 12, 14, 15, 21, 22, 23, 25, 29, 30, 34, 35, 36, 37, 38, 39, 43, 44, 45, 46, 47, 51, 53, 57, 60, 64, 65, 67, 70, 78, 79, 82, 83, 85, 86, 88, 92, 97, 101, 102, 106, 107, 108, 109, 110, 116, 118, 120, 122, 123, 126, 132, 142, 144, 153, 155, 156, 162, 164, and 166 fall into this category and are privileged.

As to some of the Documents, however, the lawyer is merely asking the client a question, giving or acknowledging factual information, or attaching a copy of a letter, agreement, or other document which does not appear to contain advice, opinion, and/or the mental impressions of the lawyer. The privilege only protects communications, not facts. *Myers v. City of Highland Village, Texas*, 212 F.R.D. 324 (ED Tex. 2003). Pre-existing facts which underlie the client's confidential communications, whether oral or written, are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services. *In re Subpoena of Curran*, 2004 WL 2099870 at *5 (ND Tex. 2004). Here, the Plaintiffs provided absolutely no explanation at the hearing with respect to how these Documents disclose information provided by the client, and there is no evidence, even assuming the Documents do disclose information provided by the client, that the information was communicated to the attorney in confidence, and thus Plaintiffs have not met their burden of proof. Documents 6, 7, 11, 16, 26, 31, 40, 42, 48, 49, 52, 56, 58, 59, 63, 72, 74, 76, 93, 104, 105, 114, 128, and 145 fall into this category and are not privileged.

Moreover, there are several Documents as to which it appears no good faith claim of privilege

could even be advanced – namely, Documents 112, 113, 146 and 168.[4] Document 112 is another email from an Akin Gump attorney which gave Browne his contact information. Document 113 is an email from an Akin Gump attorney to Browne, with the notation "fyi", which simply forwards a Yahoo! News story. Document 146 is a message from Akin Gump's email system administrator to Browne, announcing that a particular message was undeliverable. Document 168 is an email from an Akin Gump attorney to Browne, which asked Browne to call him at his direct dial number.

Several of the Documents have representatives of Stephens somewhere in the email forwarding chain, and some of the information in the emails has therefore previously been disclosed to Stephens and, if the Plaintiffs are claiming those portions of the email as privileged, they are not the proper subject of a privilege claim. Some of the Documents also attach minutes of meetings at which Stephens was present, and are therefore not privileged. Documents 16, 17, 19, and 45 fall into this category.

Similarly, some of the emails have unidentified third parties somewhere in the email forwarding chain. The case law is clear that the presence of a third person when communications are made, or the disclosure of an otherwise privileged communication to a third person, eliminates the intent for confidentiality on which the privilege rests. *In re Subpoena v. Curran*, 2004 WL 2099870 (N.D. Tex. 2004). Disclosure of any significant portion of a confidential communication waives the privilege as to the whole. *U.S. v. El Paso Co.,* 682 F.2d 530, 539 (5th Cir. 1982). The privilege is not, however, waived if a privileged communication is shared with a third person who has a common

---

[4] It appears to the Court that either a client representative or an associate at Plaintiffs' law firm simply identified all emails between Akin Gump and Browne and claimed them as privileged, without paying close attention to content. However, "the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. [It] must be specifically asserted with respect to particular documents." *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) (internal citations omitted).

**Memorandum Opinion and Order**

legal interest with respect to the subject matter of the communication. *Id*. (citing *Hodges, Grant 7 Kauffman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). Because the Plaintiffs failed to identify by role or affiliation several people whose names appear in the email chains, the Court is simply unable to assess whether or not their presence has destroyed any privilege. Accordingly, the Plaintiffs have not met their burden of proof. Document 1 falls into this category – while an Akin Gump attorney appears to be responding to a request for an advice from an e2 employee, the e2 employee included several unidentified persons on her original email to the attorney. Document 52 likewise falls into this category.

### III. Conclusion

For the foregoing reasons, the Motion to Compel is granted in part and denied in part, as set forth herein. The Court concludes that Browne's presence in the communications at issue does not destroy the attorney-client privilege. However, the Court concludes that with respect to certain of the Documents, the Plaintiffs have not met their burden to show that the privilege has been properly claimed and not waived. Accordingly, the Court directs that Plaintiffs produce Documents 1, 6, 7, 11, 16, 17, 18, 19, 26, 31, 40, 41, 42, 45, 48, 49, 52, 56, 58, 59, 63, 72, 74, 76, 93, 99, 103, 104, 105, 111, 112, 113, 114, 124, 128, 130, 145, 146, and 168 within three business days of the the entry of this Order.

**SO ORDERED**.

# # # **END OF ORDER** # # #